R. B. GODLEY LUMBER CO. et al. v. TEAGARDEN.†

(Court of Civil Appeals of Texas. Feb. 18, 1911. Rehearing Denied March 25, 1911.)

1. VENDOR AND PURCHASER (§ 242*)—BONA FIDE PURCHASERS—NOTICE—PRESUMPTIONS.
  As against an equity or an equitable estate, the purchaser of a legal title is presumed to have acted in good faith, and the burden is on one asserting such equity or estate to show

notice thereof to such purchaser when he purchased.
  [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 603–605; Dec. Dig. § 242.*]

2. CORPORATIONS (§ 428*)—NOTICE—KNOWLEDGE OF OFFICERS.
  Notice by a corporation holding legal title of adverse equities is established by notice to an officer or agent bound to communicate it to the governing body.
  [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1748–1761; Dec. Dig. § 428.*]

3. CORPORATIONS (§ 428*)—NOTICE—KNOWLEDGE OF OFFICERS.
  A stockholder-officer's interest in the assumption of his purchase-money notes by the corporation in buying land prevented his knowledge of a defect in the title operating as notice to the corporation.
  [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1748–1761; Dec. Dig. § 428.*]

4. VENDOR AND PURCHASER (§ 238*)—BONA FIDE PURCHASERS.
  A company whose grantor took legal title without notice of an adverse equity takes free of that equity.
  [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 580–582; Dec. Dig. § 238.*]

5. APPEAL AND ERROR (§ 282*) — REVIEW — QUESTIONS OF FACT.
  Generally a question of fact will not be reviewed unless called to the trial court's attention by motion for new trial, though the case was tried to the court.
  [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1662–1665; Dec. Dig. § 282.*]

6. APPEAL AND ERROR (§ 931*) — REVIEW — PRESUMPTIONS.
  A trial judge will be presumed to have made findings supporting his judgment, where there is evidence tending to sustain the findings.
  [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3764; Dec. Dig. § 931.*]

Error from District Court, Wood County; R. W. Simpson, Judge.

Trespass to try title by W. B. Teagarden against the R. B. Godley Lumber Company and others. From a judgment for plaintiff, defendants bring error. Reversed and rendered.

K. R. Craig, H. C. Geddie, and W. H. Allen, for plaintiffs in error. M. D. Carlock and Teagarden & Teagarden, for defendant in error.

BOOKHOUT, J. This was a suit in the nature of trespass to try title brought by defendant in error, W. B. Teagarden, against plaintiff in error and others in the district court of Wood county. By amended petition filed November 25, 1908, the plaintiff pleaded his title specially, which consisted, in substance, of the allegation that the land sued for, namely, a one-sixth interest in a tract of 2,222 acres of land in Wood county, Tex., was acquired by himself, R. B. Godley, and J. K. Rucker in the following way: That the said Teagarden, Godley, and Rucker agreed among themselves to buy

up pine timbered lands from the owners thereof, the said plaintiff undertaking to look up the owners and investigate the titles, he being a lawyer, and the defendant Godley agreeing to find some person who would advance the money to pay for the lands, said lands to be purchased in large quantities and then sold to some large milling company which it was thought could be induced to locate in the vicinity of the lands, the proceeds to be applied, first, to the repayment of the purchase money to whomsoever might be induced to advance the money, and the profit of the transaction to be divided equally between plaintiff, Rucker, and Godley. Plaintiff alleged that, pursuant to this plan, he purchased the land in controversy from the owners thereof, and that defendant Godley procured one Wroten, who advanced the purchase money to take the title in his own name for his protection, and this was done; the lands being paid for by Wroten, and the deeds being made to said Wroten. But afterwards the defendant Godley, without the knowledge and consent of plaintiff, procured from said Wroten a deed to himself of said 1,111 acres of land for a consideration of $6,666. Plaintiff charging that this transaction was the result of a conspiracy between Wroten and Godley against his interest, and that Wroten received as profit over and above what he had paid for the land the sum of $3,600, and prayed for judgment against Wroten for said profit. Plaintiff further charged that on the 31st day of December, 1906, defendant Godley conveyed the land to the Coleman Lumber Company, and on the same day the Coleman Lumber Company conveyed the land to the R. B. Godley Lumber Company, charging that at that time Godley was president of the Coleman Lumber Company, that one of the defendants, C. C. Slaughter, Jr., was its secretary, and that said Godley, C. C. Slaughter, Jr., C. C. Slaughter, Sr., and G. G. Wright, all of whom were defendants in this suit, were officers, stockholders, and directors of the Coleman Lumber Company, and that they were also officers, stockholders, and directors of the Godley Lumber Company. And plaintiff charged that each of the above-named defendants had actual and constructive notice of plaintiff's rights and his ownership of a one-third interest in said 1,111 acres of land at the time the same was so transferred and long prior thereto. Plaintiff charged the defendants with cutting the timber off the land, damages for cutting the timber off the land, and prayed for damages, title, and possession and for general relief. By his amended petition plaintiff dismissed as to the defendant Wroten, alleged an agreement for the acquirement of this land and other lands in the vicinity between himself, Godley, and Rucker, alleging the agreement to be a partnership in which each was equally interested with the other, by the terms of which agreement they were to jointly acquire the lands and equally own them, subject to Godley's right to have the purchase price of the land paid by the firm refunded to him first out of the proceeds of the lands when they should finally sell them. Setting out also, as in the original petition, the purchase of the land, conveyance of it to Wroten, the conveyance by Wroten to Godley, by Godley to the Coleman Lumber Company and by the Coleman Lumber Company to the R. B. Godley Lumber Company, alleging the value of the land at $40,000, praying for title and possession to a one-sixth interest. In the alternative, that he recover the value of his interest in the land against the defendant, or, in the event that he is entitled not to recover against the Godley Lumber Company, a judgment against defendants Godley, Rucker, Slaughter, Sr., Slaughter, Jr., and G. G. Wright for the value of his interest in the land.

The defendants C. C. Slaughter, Sr., C. C. Slaughter, Jr., G. G. Wright, and the Godley Lumber Company, by their first amended answer, excepted to plaintiff's petition on various grounds, answered by general denial and in behalf of the Godley Lumber Company, the defendants C. C. Slaughter, Sr., and C. C. Slaughter, Jr., who alleged that they are interested both as stockholders in good faith and creditors in good faith of said company in protecting it against any cause of action which plaintiff might have individually against Godley, Rucker, or Wroten, alleged that the said R. B. Godley Lumber Company acquired the legal title to said land in good faith for a valuable consideration paid without notice of plaintiff's claim or alleged equities therein; that the said R. B. Godley Lumber Company, or its predecessor in title, the Coleman Lumber Company, purchased said land from R. B. Godley in good faith for a valuable consideration paid, without any notice of plaintiff's alleged equity; that in such transaction R. B. Godley was acting in his individual interest and behalf, and not as the representative of the vendee, but adversely thereto. Wherefore defendant company says that it should not be charged with notice which R. B. Godley may have had of plaintiff's rights, which, if any, were not communicated to said company or to any officer or stockholder interested in said purchase adverse to the vendor; that the defendant Godley Lumber Company should not be charged with any notice of the alleged knowledge of R. B. Godley of plaintiff's claim by reason of his being a stockholder and officer of the defendant company when the conveyance was made to it by the Coleman Lumber Company, for the reason that the Coleman Lumber Company was a purchaser in good faith, without notice, and because adverse interest in the original transaction between R. B. Godley and the Coleman Lumber Company continued and applied as between said God-

ley and this defendant, the vendee of the Coleman Lumber Company.

The defendant G. G. Wright denied that he was ever at any time a stockholder of the R. B. Godley Lumber Company or otherwise personally interested in the matter in controversy.

The defendants Godley, Rucker, the Coleman Lumber Company, and the R. B. Godley Lumber Company by separate answer set up special exceptions to plaintiff's petition, and the defendants Rucker and Godley, answering specially, allege that there was at one time an agreement between plaintiff and themselves to promote the acquisition of a large body of pine timber lands sufficient to justify the erection of a large sawmill and railroad and promote at the same time the erection of such mill and railroad; that the land in controversy would have constituted a very small fraction of the amount of land necessary for the purposes contemplated; that plaintiff was to devote his time and attention and services to hunting up the owners, investigating the titles and negotiating the purchase of such lands, while the defendants were to inspect and select lands and defendant Godley was to look after financing the enterprise, all of them to act together in the promotion of the enterprise. Defendant Godley denied that there was any representation on his part that he had the money or any guaranty that he could obtain it. They charged that plaintiff shortly thereafter abandoned said enterprise and removed from Wood county to San Antonio, Bexar county, where he has ever since resided, and where his time has been devoted to the active practice of his profession as a lawyer; that since then plaintiff had done nothing in the promotion of the enterprise other than the procurement of the land in controversy, and that this land was a mere incident in the enterprise, and, as to the same, plaintiff was not and is not entitled to any interest therein or to demand the profit from the sale thereof, for the reason that plaintiff was at the time of and before the conveyance thereof to Wroten and in the negotiation of said conveyance the agent and attorney for the owners of said land and advised with and procured the execution of said conveyance by said owners as their attorney and agent, and so represented the fact to these defendants; that, by reason of plaintiff's abandonment of said enterprise, the venture fell through, and these defendants were thereby deprived of the ability to earn the contemplated profit therefrom which they estimated and had reason to believe would be and which they charge would have been in the sum of between $300,000 and $500,000; that the title to the land was placed in the name of Wroten, and Wroten accepted the trust upon the consideration of the guaranty of defendant Godley that the said Wroten should have returned to him the purchase money therefor whenever de-

manded by said Wroten, and that said Wroten would convey the title when demanded of him upon the repayment to him of the purchase money and agreed compensation assented to by plaintiff of $1,000; that thereafter, to wit, on the 25th day of October, 1905, the said Wroten, being in bad health and desirous of arranging his business, demanded of the defendant Godley that he make good his guaranty and take up said deed, and refund to him, the said Wroten, his money and compensation agreed upon, and defendant Godley was compelled to and did refund to said Wroten the said purchase money aforesaid and the agreed compensation of $1,000, and the said Wroten executed to him his deed of conveyance to said land. Defendant Godley especially denied that he realized any profits from the transaction.

Rucker denied that he had received from any source any profit from the alleged agreement between plaintiff and defendants Rucker and Godley, but, on the contrary, by the default of plaintiff, had lost large contemplated profits and the opportunity of earning the same.

Defendants Godley Lumber Company and the Coleman Lumber Company pleaded purchase in good faith and payment of the consideration without notice of plaintiff's claim.

In the exceptions contained in said answer, the defendants also set up the plea of the statute of two years' limitation. Plaintiff filed a trial amendment in reply to the answer of Godley, denying that he had agreed to the payment to Wroten of the sum of $1,000 for his services in advancing the money and holding the title to the land. In reply to the plea of the statute of limitation, he charged that Godley and defendants concealed the fact from him that Godley had procured a deed from Wroten, and that the land had been conveyed to the Coleman Lumber Company and by it to the Godley Lumber Company. Plaintiff filed a second trial amendment to cure the objections pointed out by defendants Slaughter, Sr., Slaughter, Jr., and the Godley Lumber Company in their first special exception, which exception was as follows: "They excepted to all that part of plaintiff's first amended petition which seeks to establish a personal liability against them or either of them on the ground that the allegations of said petition are insufficient in law." In said second trial amendment, plaintiff charged that the defendants O. C. Slaughter, Sr., C. C. Slaughter, Jr., and G. G. Wright, for the purpose of defrauding said plaintiff out of said land, in confederation with the said R. B. Godley and J. K. Rucker, all together using the two said lumber companies as mere tools and instruments, and under and by virtue of such plan and conspiracy caused the lands to be transferred from Godley to the Coleman Lumber Company and by the Coleman Lumber Company to the Godley Lum-

ber Company, all of which was done for the purpose of passing the land to an innocent purchaser and thereby defraud plaintiff. He charged that the Godley Lumber Company was insolvent, and that the defendants have absorbed the property and assets since the institution of this suit with the intent to defraud plaintiff and for the personal benefit of each of them, and that each ·of them is liable .to plaintiff for ·his damages, should it be found that he cannot now ·reclaim the land.

The case was, tried at the fall term of the district court of Wood county and judgment was rendered and entered upon findings by the jury on special issues nunc pro tunc at the spring term, May 4, 1909.

At the conclusion of plaintiff's testimony, the defendants C. C. Slaughter, Sr., ·C. C. Slaughter, Jr., G. G. Wright, and the R. B. Godley Lumber Company filed a motion for a peremptory instruction to the jury to return a verdict in favor of said defendants. On this motion, the court entered an order adjudging that plaintiff had made no case against C. C. Slaughter, Sr., C. C. Slaughter, Jr., and G. G. Wright, and that they would not be required to further appear and defend, but, as to defendant .R. B. Godley Lumber Company, the motion was denied, to which ruling of the court the· defendant R. B. Godley Lumber Company excepted. The case was tried before a jury. Special issues were submitted, which were answered. Defendants filed a motion to set aside the findings of the jury, and an amended motion was made to set aside such findings, which was overruled by the court, which was excepted to and notice of appeal given. The defendant R. B. Godley Lumber Company filed a motion to enter judgment in the event the court should refuse to set aside the findings of the jury, notwithstanding the verdict on special issues in favor of said defendant for the land in controversy for the reason that no offer to return the purchase money or the proportionate part thereof, for which plaintiff admits liability was pleaded or proven or made on the trial; second, there is no evidence in the case charging the defendant R. B. Godley Lumber Company with notice of plaintiff's equity in the land in controversy, which motion was overruled, to which ruling the defendant R. B. Godley Lumber Company excepted, and in open court gave notice of appeal to the Court of Civil Appeals. A statement of facts was duly filed and the cause brought to this court on writ of error.

The first assignment of error reads: "The judgment of the court is contrary to the law and not authorized by the verdict of the jury, for that plaintiff's claim to the land being in equity and the legal title thereto being in the R. B. Godley Lumber Company, according to plaintiff's own statement of his case, and as shown by the record, the burden was on the plaintiff to establish, and he was

not entitled to recover unless he should establish the fact that the R. B. Godley Lumber Company purchased the land with notice of his equity. This issue was not determined by any finding of the jury, and the court was not authorized to assume the existence of such fact." This assignment is submitted as a proposition. The proposition is also presented that "there was no evidence in the case to charge either the Coleman Lumber Company or the R. B. Godley Lumber Company with notice of any equity which W. B. Teagarden may have had in the land. The only ground upon which the court below could have predicated such conclusion was that R. B. Godley, the vendor, had such knowledge and that he was a stockholder in the Coleman Lumber Company and also in the Godley Lumber Company, but the fact that R. B. Godley was a stockholder and an officer in the Coleman Lumber Company at the time he conveyed the land in controversy to that company would not charge the company with the knowledge which said Godley may have had at the time of any defect in his title, and the same adverse interest continuing in Godley would prevent his personal knowledge of such defects in ·his title· being chargeable against the R. B. Godley Lumber Company, although he was an officer in that company at the· time of the conveyance to it · of the land in controversy by the Coleman Lumber Company; it appearing from the facts in the case that the notes which Godley had executed to Wroten for the purchase of the land from him and which had been assumed by the Coleman Lumber Company and which were in turn assumed by the R. B. Godley Lumber Company were still out-. standing against the said R. B. Godley and° a lien upon the land at the time of the purchase by the R. B. Godley Lumber Company."

Plaintiff, in his ·amended petition, set out the conveyances from the former owners of the land to Wroten, from Wroten to Godley, from Godley· to the Coleman Lumber Company, and from the Coleman Lumber Company to the R. B. Godley Lumber Company. Plaintiff also introduced .in evidence on the trial of the case several deeds from the owners to W. H. Wroten, the deed from W. H. Wroten to R. B. Godley, dated the 24th day of October, 1905, conveying the lands in controversy, reciting the consideration to be $2,347.98 in cash and one note, executed by Godley to Wroten, payable four months after date, for the sum of $1,851.50, and one note, payable five months after date, for the sum of $1,466.52, and one note, payable six months after date, for the sum of $1,000, reciting that each of said. notes is for the purchase money and retaining a vendor's lien on the land conveyed, recorded on the 2d day of October, 1906. Also a deed from R. B. Godley to the Coleman Lumber Company, reciting the consideration to be $6,666, $2,347.98 cash, one note, executed by the Cole-

man Lumber Company, payable four months after date, in the sum of $1,851.50, one note, payable five months after date, for $1,466.52, and one note for the sum of $1,000, payable six months after date, retaining a vendor's lien on the land for the notes, covering the land in controversy. This deed was dated the 24th day of October, 1905; recorded the 28th day of September, 1906. Also, deed from the Coleman Lumber Company to the R. B. Godley Lumber Company, reciting the order of the board of directors of the Coleman Lumber Company, directing the sale of the land for the purpose of paying off the outstanding obligation of the company, directing the president, R. B. Godley, and C. C. Slaughter, Jr., secretary, to make conveyance of the following described property, describing the land in controversy among other tracts; the consideration recited being the sum of $1,500 and the payment of three notes payable to W. H. Wroten or order, amounting in the aggregate to about $4,218 and interest, which said notes are a lien on the land this day conveyed to vendee herein, which vendee assumes the payment hereof and other obligations owing by the said Coleman Lumber Company paid and to be paid by the R. B. Godley Lumber Company. This deed was dated the 31st day of December, 1906, and recorded January ———, 1907. Plaintiff also offered in evidence the deed of correction from R. B. Godley to the Coleman Lumber Company, dated October 24, 1905, correcting the former deed which recited the execution of the notes by the Coleman Lumber Company, which was a mistake, and the consideration was and should have been recited as the assumption by the Coleman Lumber Company of three promissory notes, executed by R. B. Godley and payable to W. H. Wroten or order, one for $1,851.50, dated October 24, 1905, due four months after date, another for $1,466.52, due five months after date, and the other for $1,000, due six months after date, which said notes were made a lien on the land described in the deed from said W. H. Wroten to him, the said Godley, which deed is recorded in Wood county, Tex., record of deeds, and stating that, in order to correct the description of said conveyance, this deed is executed and in consideration of said correction of said deed, granted, sold, and conveyed, etc., the land in controversy. This deed of correction was dated the 31st day of December, 1906, filed for record January 9, 1907. When plaintiff closed his testimony, the foregoing deeds and the testimony of plaintiff himself, going into the details of the transaction between himself and Godley and Rucker with reference to their venture in buying pine lands, statement in detail of his actions and claims as between himself and R. B. Godley, and what he, plaintiff, did in acquiring the land in controversy, was gone into fully and in detail, and that constituted the whole of plaintiff's case, there being no testimony of any kind

offered to charge any other stockholders or officers of either the Coleman Lumber Company or the R. B. Godley Lumber Company, other than J. K. Rucker and R. B. Godley, with any notice of plaintiff's interest in the land or the manner in which Wroten acquired the title to the land or any of the facts relating to the transactions between plaintiff and Godley and Rucker.

At this stage of the trial, the defendants C. C. Slaughter, Sr., C. C. Slaughter, Jr., G. G. Wright, and the R. B. Godley Lumber Company interposed their motion for peremptory instructions to the jury. On this motion the court entered an order sustaining it as to C. C. Slaughter, Sr., C. C. Slaughter, Jr., and G. G. Wright, but overruling it as to the R. B. Godley Lumber Company, to which said company excepted. The defendants introduced C. C. Slaughter, Jr., who testified that he went into the Coleman Lumber Company about the 5th of November, 1906; that the stockholders in the company were R. B. Godley, C. P. Schulze, C. C. Slaughter, Sr., father of witness, and J. K. Rucker, and that G. G. Wright was not a stockholder; that he, the witness, put into the company $10,- 000 in the purchase of stock; that C. C. Slaughter, Sr., owned two shares of stock; that, before investing in the Coleman Lumber Company, witness had Mr. G. G. Wright, an attorney, to examine into the title of the property held by said company, and his said attorney reported that the title was all right, and that he, the witness, could go ahead and invest in the company if he wanted to, as the matter was all right; that witness, as secretary of the company, paid off the notes executed by R. B. Godley to W. H. Wroten in April, 1907; at the time the notes were paid off witness had never heard anything of plaintiff's claim against the land in controversy; that witness, as secretary, obtained the money from his father, C. C. Slaughter, Sr., with which to pay off the notes, and they were paid off for the R. B. Godley Lumber Company. Witness further stated that the first he ever heard of plaintiff's claim was when a deputy sheriff served a citation on Mr. Rucker at the mill in May, 1907.

G. G. Wright, as witness for defendants, testified that he, as attorney for C. C. Slaughter, Sr., and C. C. Slaughter, Jr., examined into the title of the land belonging to the Coleman Lumber Company in the fall of 1906, embracing in the holdings which was proposed to be transferred by the Coleman Lumber Company to the R. B. Godley Lumber Company the 1,111 acres of land in controversy; that there was a discrepancy in the consideration recited, which required the execution of another deed. Witness pronounced the title to the land good. This investigation was made at the request of C. C. Slaughter, Sr., and C. C. Slaughter, Jr., in contemplation of the investment by them in that enterprise. They made the investment on witness' advice as to the validity of the

title. The R. B. Godley Lumber Company bought all the assets of the Coleman Lumber Company and paid off its debts. This arrangement was in contemplation when the Slaughters invested their money. Except as to the details of the transaction between the Coleman Lumber Company and the Godley Lumber Company, there was no other testimony in the case. Relating to the purchase by the Coleman Lumber Company from Godley or the purchase by the Godley Lumber Company from the Coleman Lumber Company, there was no testimony except that R. B. Godley testified that he made no profit on his sale to the Coleman Lumber Company.

At the conclusion of the case and after the return of the verdict of the jury, the defendant R. B. Godley Lumber Company filed the following motion: "Now comes the defendant R. B. Godley Lumber Company, and, in the event the court should refuse to set aside the findings of the jury, moves the court, notwithstanding the verdict on special issues submitted to the jury herein, to enter judgment in the case in favor of this defendant for the land in controversy for the reasons: First, no offer to return the purchase money or the proportionate parts thereof, for which plaintiff admits liability, was pleaded or proven or made on the trial; second, there is no evidence in the case charging the defendant R. B. Godley Lumber Company with notice of plaintiff's equity in the land in controversy." This motion was overruled by the court, to which ruling of the court the defendant R. B. Godley Lumber Company excepted and in open court gave notice of appeal to this court. It is clear that, as against an equity or equitable estate, the holder of the legal title is presumed to be a holder in good faith. The well-established rule is that one who seeks to establish an equity or equitable interest as against the holder of the legal title has the burden of proving notice of his equity to the holder of the legal title at the time of his purchase. Cameron v. Romele, 53 Tex. 242; Oaks v. West, 64 S. W. 1036; Saunders v. Isbell, 5 Tex. Civ. App. 515, 24 S. W. 307; Halbert v. De Bode, 15 Tex. Civ. App. 630, 40 S. W. 1011; Turner v. Cochran, 63 S. W. 155. When the holder of the legal title is a corporation, this may be established by showing notice to such officer or person whose official relation to the corporation is such as makes it his duty to communicate it to the governing body, or which raises the presumption that he did communicate such information. When notice is charged against a corporation by reason of notice to an officer or agent, it is so charged upon the presumption that such officer or agent discharged his duty to the corporation by communicating his information, or that, being the representative of the corporation in the transaction, he is as to that transaction the corporation. When, however, the officer or agent is personally interested in the transaction adverse to the corporation, as in a sale by himself to the corporation, he is held not to be the representative of the corporation; and, it being to his personal interest to conceal defects in his title, the presumption that he communicated such defect to the corporation does not obtain. Harrington v. McFarland, 1 Tex. Civ. App. 292, 293, 21 S. W. 116, and cases cited; Huffcut on Agency, pp. 152, 153, and cases cited; Cooper v. Ford, 29 Tex. Civ. App. 253, 69 S. W. 487; 1 Am. & Eng. Ency. L. (2d Ed.) 1145, and note 2; 3 Cook, Corporations (6th Ed.) pp. 2369, 2370. It is wholly immaterial what official position R. B. Godley held in the Coleman Lumber Company, or how much of the stock he held when he sold the land to the Coleman Lumber Company. His position as vendor was adverse to, and not representative of, the corporation as vendee. The assumption by the Coleman Lumber Company of the payment of the vendor's lien notes of Godley to Wroten was a legal liability incurred by which the corporation became primarily liable to Wroten, and was sufficient as payment to support good-faith purchase. There was no record notice of Teagarden's claim to an interest in the land or any fact or circumstance in evidence to put the purchaser on inquiry. If the Coleman Lumber Company acquired the title without notice of Teagarden's alleged equity, then the R. B. Godley Lumber Company acquired the title free of such equity. But, in addition to that, the purchase of the R. B. Godley Lumber Company was without notice, and the purchase money was in fact paid before notice of Teagarden's claim. When the Godley Lumber Company purchased the land, the purchase-money notes given by R. B. Godley were still outstanding, and his interest in having the corporation assume and pay off those notes made his position and interest adverse to and not representative of the company, and the corporation was therefore not chargeable with his individual knowledge of any defect in the title.

Defendant in error argues that, the question of notice not having been submitted to the jury as an issue in the case and there being no finding by the jury as to notice, it was the duty of the court to find on such issue, and there being no findings of fact by the court, under the statute, it will be presumed that the court's finding upon this issue was such as to support the judgment; that the plaintiff in error not having moved for a new trial in the lower court this court cannot on appeal question such finding. It is true that as a general rule a question of fact will not be reviewed on appeal unless called to the attention of the trial court by motion for new trial, and this is true although the case is tried by the court. Black v. Black, 67 S. W. 928. It will also be presumed, if there be evidence in the record

authorizing the finding, the court found the issues so as to support his judgment. Sayles' Civ. St. 1897, art. 1331. But this presumption is only indulged on appeal where there is evidence tending to support the finding. Where there is no evidence raising the issue upon which such a finding can be based, such presumption does not arise. If, therefore, there be no evidence or the evidence be insufficient to raise the issue, it will not be presumed that the court found that the plaintiff in error at the time it acquired and paid for the land had notice of plaintiff's equity therein. As stated, the plaintiff's evidence showed conveyances in regular form from the former owners of the land to W. H. Wroten and conveyances regular in form from Wroten to the Coleman Lumber Company and from that company to the R. B. Godley Lumber Company. The legal title was thus placed in the last-named company.

We have previously held that the burden was on plaintiff, Teagarden, to prove notice of his equity in the land to the R. B. Godley Lumber Company at the time it acquired the land. This was not done, unless notice to R. B. Godley of the circumstances under which defendant in error acquired his interest in the land is to be imputed to the company. R. B. Godley was president of the Coleman Lumber Company at the time the land was conveyed to it by Wroten and was also president of the R. B. Godley Lumber Company at the time it acquired the land. Defendant in error argues that notice to Godley of his equity is to be imputed to the Coleman Lumber Company. We have already held against this contention. The evidence fails to show that any officer of the Coleman Lumber Company other than R. B. Godley had notice of plaintiff's equity in the land at the time Wroten conveyed it to that company. Coleman testified he was not a stockholder or director in the corporation, and his testimony is not disputed. Rucker was a stockholder, but testified he was not a director. There is no direct testimony that he was a director.

It is argued that R. B. Godley was the principal stockholder and owned a majority of the stock in both the Coleman Lumber Company and the Godley Lumber Company, and that he dominated each of said companies in turn, and was in fact their alter ego. We do not concur in this contention. The evidence shows that the Coleman Lumber Company was duly organized with a president and secretary and board of directors, and was conducting its business in the usual way, and while so operating its affairs that C. C. Slaughter, Jr., bought $10,000 of stock in that company, and paid that much cash to the company, and became the owner of stock therein equal to the number of shares owned by R. B. Godley. This investment was made on the advice of an attorney who had ex-amined the title to the land of the company and reported the company's title good. The plaintiff, Teagarden, made no offer to return his proportionate part of the purchase money for the land, or made any offer to do equity. The motion to render judgment was based upon the ground that there had been no offer on the part of plaintiff to return the purchase money or the proportionate part thereof, and no evidence charging the R. B. Godley Lumber Company with notice of plaintiff's equity in the land.

We conclude the trial court erred in failing to instruct a verdict for plaintiff in error upon the close of plaintiff's evidence as contended in the third assignment of error, and it also erred, as contended in the fourth assignment of error, in refusing to render judgment for plaintiff in error on the special findings of the jury and the undisputed evidence, and for this reason the judgment must be reversed and judgment here rendered for plaintiff in error.

Reversed and rendered.